Gordon Locke, Esq.
74 Sheldrake Place
New Rochelle NY 10804
Tel. 914-632-8568
D.C. Bar No. NY0070

FILED
DEC - 4 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

FOCUS ENTERPRISES, INC.,
1150 Connecticut Avenue, NW, Ste 515
Washington DC 20036
                Plaintiff,

-against-

ZASSI MEDICAL EVOLUTIONS, INC.

                Defendant

CASE NUMBER 1:06CV02068
JUDGE: Gladys Kessler
DECK TYPE: Contract
DATE STAMP: 12/04/2006

COMPLAINT
Case No.

Plaintiff, Focus Enterprises, Inc, ("Focus"), by its attorney, Gordon Locke, Esq., complains of the Defendant, Zassi Medical Evolutions, Inc. ("ZME"), alleging as follows:

### Preliminary Statement

This is an action to recover for the breach of an oral, or implied, contract or in the alterative to compensate Focus for the unjust enrichment realized by ZME at Focus' cost, expense and detriment. Focus is a middle market investment bank that is in the business of identifying and/or introducing small and mid-sized companies to potential financial buyers or investors ("Financial Investors") and/or strategic investors/buyers, often competitors servicing the same or similar markets or operating companies looking to broaden operations by entering new markets ("Strategic Buyers") to such companies. If a transaction is entered into between Focus' client (in this instance, ZME) Focus is paid an agreed fee equal to five (5%) per cent of the agreed value of the transaction. During 2006, at a time when ZME had actual knowledge of Focus' business and business practices, ZME requested Focus provide ZME with a list of potential Strategic Buyers. Focus provided ZME with such a list identifying potential Strategic Buyers, including Hollister International, Incorporated ("Hollister"), an Illinois based corporation as such a potential strategic buyer of ZME, or a material part of ZME's business. ZME, following Focus' having

identified Hollister as a potential Strategic Buyer, contacted Hollister and subsequently sold a material part of ZME's business and assets to Hollister for a price believed to be not less that $85,000,000 of which $35,000,000 was paid at closing, with he balance to be paid in the future depending upon the occurrence certain agreed future conditions or events. ZME has failed and refused to compensate Focus for its services.

## Jurisdiction and Venue

1)  Plaintiff, Focus is a corporation organized under the laws of the Commonwealth of Virginia and has its principal place of business in the District of Columbia.

2)  Defendant, ZME, upon information and belief, is a corporation organized under the laws of the State of Florida and has its principal place in the State of Florida.

3)  The amount of Focus' claims against ZME exceeds $75,000.00.

4)  This Court has jurisdiction and venue pursuant to 28 U.S.C. §§ 1332; 1391.

## General Allegations

5)  Focus conducts its business and directs its operations from its offices in the District of Columbia.

6)  Focus, at its offices in the District of Columbia, maintains its data base of potential Financial Investors and Strategic Buyers.

7)  Focus, at its offices in the District of Columbia, collects and maintains extensive industry specific studies and/or product specific analyses.

8)  Focus, at its offices in the District of Columbia, using is proprietary and confidential methodology, prepares a detailed confidential

2

information memorandum (the "Confidential Information Memorandum") about Focus' client, its business, its market, its personnel and such other matters a Focus, in its experience, deems appropriate to allow a prospective Financial Investor or Strategic Buyer to proceed with further investigations and initiating direct negotiations with Focus' client.

9) Focus, at its offices in the District of Columbia, prepares its transaction and client specific lists of potential Financial Investors and/or Strategic Buyers.

10) When Focus' client authorizes it, Focus, from is offices in the District of Columbia, makes the initial contact with prospective Financial Investors and/or with prospective Strategic Buyers.

11) If, and to the extent that Focus' client authorizes it, Focus thereafter maintains follow-up contacts with the prospective Financial Investors and/or Strategic Buyers.

12) When Focus' client requests that Focus not contact any one or more prospective Financial Investors and/or prospective Strategic Buyers, Focus complies with such requests/instructions.

13) When Focus' client requests that Focus not maintain follow-up contacts with any one or more prospective Financial Buyers and/or prospective Strategic Buyers, Focus complies with such requests/instructions.

14) Focus provides its clients with such additional information services and advice regarding negotiation strategies as Focus' client may request.

15) Focus maintains its relationships with its clients and potential clients generally through employee based out of Focus' offices in Atlanta, Georgia, San Francisco, California, Chicago Illinois and the District of Columbia.

16) Focus' Atlanta, Georgia based employees, William Inman ("Inman") and George Shea ("Shea") each have a long standing relationship with ZME, which included Inman, prior to entering into his association with Focus, having identified Financial Investors to ZME who purchased equity in ZME, in a transaction for which Inman (prior to his employment with Focus) was paid fees, and a more recent effort to identify additional suitable Financial Investors for Zassi, for which Focus, if successful, was to be paid a fee equal to five percent of the funds raised in any completed transaction.

## FIRST CLAIM
(Breach of Contract or Quasi Contract)

17) The allegations of paragraphs 1 through 16 are incorporated by reference.

18) Prior to February 7, 2006, ZME knew, or should have known that Focus should be, would have to be, paid a success fee in the event that Focus identified a Financial Investor, or a Strategic Buyer to ZME, with which ZME entered into a transaction for the sale of all or a portion of ZME's assets.

19) Prior to February 7, 200, ZME knew, or should have known that the fee to be paid to Focus for identifying potential Financial Investor and/or a Strategic Buyer for ZME or a substantial portion of ZME's business or assets would be five percent of the total consideration paid (the "Focus Success Fee") or to be paid to ZME.

20) Prior to February 7, 2006, ZME orally requested Focus to prepare a list identifying potential Strategic Buyers of ZME, or a substantial part of ZME's assets.

21) Prior to February 7, 2006, at virtually the same time as ZME requested Focus to provide ZME with a list of potential Strategic Buyers for ZME, for a substantial portion of ZME's assets, ZME and Focus entered into an oral agreement for Focus to prepare and provide ZME with a list of potential strategic buyer of ZME and/or ZME's business and assets, and ZME agreed to pay Focus the Focus Success Fee if ZME entered into a transaction with one of the entities identified by Focus to ZME on the list of potential Strategic Buyers of ZME or all or a substantial part of ZME's assets.

22) Focus, at its offices in the District of Columbia, using Focus' confidential and proprietary methodology, prepared a confidential information memorandum (the "ZME Confidential Information Memorandum") about ZME, its business, its markets, its projected prospects for the future and such further information, as Focus, using its experience and expertise deemed relevant and appropriate to allow prospective Financial Investors and prospective Strategic Buyers to quickly proceed with further investigation and negotiation of a transaction between such Financial Investor or Strategic Buyer and ZME.

23) On February 7, 2006, at a meeting of ZME's stockholders, ZME told the stockholders that Focus had been retained by ZME to explore all options to help ZME raise cash, improve its liquidity and/or sell ZME, or a portion of ZME's assets or business.

24) On February 7, 2006, ZME and ZME's stockholders knew, or should have known, that if Focus was successful in identifying a prospective Financial Buyer or a prospective Strategic Buyer with which ZME entered into a transaction, ZME would have to pay Focus the Focus Success Fee.

25) Upon learning of ZME having instructed Focus to explore all options of behalf of ZME to raise cash, improve ZME's liquidity and/or sell ZME, neither ZME nor any of ZME's stockholders raised any question about, or objection to, ZME paying Focus the Focus Success Fee if a transaction was done between ZME and an entity identified to ZME on the list of prospective Strategic Buyers that was to be prepared by Focus.

26) On or about February 7, 2006 Focus, in its District of Columbia offices, in conformity with Zassi's direction, commenced the process of preparing a list of prospective Strategic Buyers for ZME, or its assets.

27) On or about March 30, 2006, Focus completed the preparation of the list of prospective Strategic Buyers for ZME or its assets.

28) On or about April 13, 2006, Focus, from its offices in the District of Columbia, delivered to ZME, a copy of the list of prospective Strategic Buyers for ZME or its assets.

29) One prospective Strategic Buyer that Focus identified on the list of prospective Strategic Buyers for ZME or for a substantial portion of ZME's or assets, was Hollister.

30) ZME, after reviewing the list of prospective Strategic Buyers (including Hollister) that Focus had prepared for ZME, advised Focus that ZME

knew Hollister, that ZME would itself contact the potential Strategic Buyers (including Hollister) and that Focus was not to take any action with respect to Hollister or the other potential Strategic Buyers.

31) Focus complied with ZME's wishes and instructions, and in reliance upon ZME's existing agreement to pay Focus the Focus Success Fee if ZME entered into an agreement with any prospective Strategic Buyer, Focus did not contact Hollister or the other entities identified on the list of prospective Strategic Buyers that Focus had prepared for, and delivered to, ZME.

32) Upon information and belief ZME contacted Hollister.

33) Upon information and belief, ZME furnished Hollister with a copy of the ZME Confidential Information Memorandum that had been prepared by Focus in the District of Columbia.

34) Upon information and belief, Hollister used the ZME Confidential Information Memorandum, in whole of in part, to make a preliminary analysis of ZME and its business, and to make a decision to quickly proceed with such acts and actions as Hollister deemed necessary or appropriate to acquire ZME, or its assets.

35) During the course of ZME's negotiations for the sale to Hollister, Focus, at ZME's specific instance and request, continued to provide advice and counsel to ZME, with respect to various negotiating strategies, positions and protections, with the expectation that ZME would pay Focus the Focus Success Fee at the closing of the Sale.

36) On or about September 13, 2006, ZME sold a substantial portion of ZME's business and assets to Hollister (the Sale).

37) ZME, in making its decision to sell a substantial portion of ZME's assets to Hollister, used information furnished by Focus to ZME to determine that the Sale was the most viable option for Hollister at the time.

38) On information and belief the purchase price paid and to be paid by Hollister in connection with the Sale was $85,000,000, of which $35,000,000 was paid in cash at the time of the Sale, with the balance of the purchase price to be paid at a future time or times, depending upon the happening of certain conditions specified in the Sale agreement.

39) The Focus Success Fee payable in connection with the $85,000,000 Sale is $3,750,000, of which $1,750,000 (5% of $35,000,000) should have been paid at the time the Sale closed and ZME was paid the $35,000,000 cash portion of the price, which additional payments to be made by ZME to Focus at the time each subsequent payment is made by Hollister to ZME on account of the Sale.

40) On or about September 27, 2006, ZME telephoned Focus at its offices in the District of Columbia and stated that ZME would not pay the Focus Success Fee and ZME would not pay any part of the Focus Success Fee.

41) Focus has been injured and damaged by ZME's refusal to pay Focus its Focus Success Fee in connection with ZME having entered into the Sale.

42) The amount that Focus has been damaged by ZME failing and refusing to pay Focus the Focus Success Fee is, upon information and belief, a sum not less $1,750,000 and believed to be not more than $4,250,000.

**Second Claim** –in the alternative (Unjust Enrichment)

43) The allegations of paragraphs 1 through 42 above are incorporated by reference.

44) Focus, in presenting the list of prospective Strategic Buyers (including Hollister) to ZME, as aforesaid, acted in accordance with the business relationship and protocol that Focus had established with ZME.

45) Focus presented the list of prospective Strategic Buyers to ZME with the reasonable understanding and expectation that ZME would recognize Focus' right to be paid the Focus Success Fee if ZME were to enter into a transaction with any entity (including without limitation, Hollister) that was identified to ZME on the list of prospective Strategic Investors that was submitted by Focus to ZME.

46) ZME used and exploited the submission of the list of prospective Strategic Buyers that was furnished by Focus to ZME for the purpose of contacting Hollister and subsequently entering into the Sale.

47) ZME used and exploited the ZME Confidential Information Memorandum that had been prepared by Focus using Focus' proprietary methodology for the purpose of enticing Hollister's early interest in entering into the Sale.

48) Focus thereby conferred a benefit on ZME.

49) ZME was enriched by its use and exploitation of the list of prospective Strategic Buyers and the ZME Confidential Information Memorandum at Focus' expense.

50) Equity and good conscience dictate that ZME must pay Focus for the benefit that Focus conferred, and ZME received, as aforesaid.

51) ZME has been unjustly enriched by an amount equal to five percent of the consideration paid and to be paid to ZME in the future pursuant to the terms of the Sale.

52) By virtue of the foregoing Focus is entitled to a judgment and order in the amount of $1,750,000 on account of the consideration heretofore paid by Hollister to ZME plus five percent of all future payments made by Hollister to ZME pursuant to the terms of the Sale.

**Third Claim** – in the alternative (Quantum Meruit)

53) The allegations of paragraphs 1 through 52 are incorporated by reference.

54) Upon ZME's Sale to Hollister as aforesaid, Focus earned its Focus Success Fee.

WHEREFORE, Focus prays the court enter a judgment and order:

1. On Focus' first claim, in the amount of $1,750,000 with an order directing that ZME pay Focus amounts equal to five percent of all future payments to be made by Hollister to Focus on account of the Sale;

2. On Focus' second claim, in the amount of $1,750,000 with an order directing that ZME pay Focus amounts equal to five percent of all future payments to be made by Hollister to Focus on account of the Sale;

3. On Focus' third claim, in the amount of $1,750,000 with an order directing that ZME pay Focus amounts equal to five percent of all future payments to be made by Hollister to Focus on account of the Sale;

4. Interest from the date each payment was received by ZME form Hollister, or is received in the future by ZME from Hollister through the date each payment is made by ZME to Focus;

5. Costs and disbursements of this action; and

6. Such other and further relief as the Court finds just and proper in the circumstances.

Dated: December 4, 2006
District of Columbia

Gordon Locke (GL 6360)
Attorney for Plaintiff- Focus Enterprises, Inc.
74 Sheldrake Place
New Rochelle NY 10804
Tel. No. 914-632-8568
Fax No. 914-654-8226

DC Bar 0070