UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

_____

FOCUS ENTERPRISES, INC.

          *Plaintiff*              CASE NO.   1:06cv02068 (GK)

   *-against-*

ZASSI MEDICAL EVOLUTIONS, INC.

          *Defendant*
_____

**PLAINTIFF'S POINT AND AUTHORITIES SUBMITTED IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FOR LACK OR JURISDICTION
AND/OR FOR TRANSFER OF VENUE**

**Preliminary Statement**

Plaintiff. Focus Enterprises, Inc.  ("Focus") is a Virginia corporation having is principal place of business in the District of Columbia.  Defendant, Zassi Medical Evolutions, Inc. ("Zassi") is a Florida corporation having its principal place of business in Florida.

This diversity action case was commenced by Focus filing suit in this Court alleging claims for breach of contract or quasi contract and for unjust enrichment.

Zassi, through counsel, responded initially by waiving service of the summons and subsequently by motion to dismiss for lack of personal jurisdiction and/or for the transfer of venue to the United States District Court for the Middle District of Florida, the jurisdiction within which Zassi has its principal place of business.

Focus, for the reasons stated below, and each of them, opposes Zassi's instant motion.

## Statement of Facts

Focus, a Virginia corporation headquartered in the District of Columbia, is a middle market investment banking firm sometimes operating as a finder, with offices in the District of Columbia and branches in San Francisco California, Chicago Illinois and Atlanta Georgia.  Declaration of Douglas E. Rodgers, under penalty of perjury, dated March 7, 2007 ("Rodgers' Decl.") ¶ 3.

In the ordinary course of Focus' business, Focus, for each of its clients has Focus' research department, at Focus' offices in the District of Columbia research and write a Confidential Investment Memorandum (the "CIM") and research suitable target companies from Focus' extensive data base that is maintained at Focus' office in the District of Columbia, to contact to make the investment.  Focus then presents the list to the client for its approval or modification.   Concurrently with the preparation of the CIM, Focus, again at its offices in the District of Columbia prepare an individualized initial contact letter for the purpose of stimulating interest in an investment in the client. This letter is also subject to review and editing by the client. Rodger's Decl. ¶¶ 4 and 5. After the initial contact letter is approved by the client, the letters would be individually prepared in Focus" District of Columbia Office, electronically signed by Focus' relationship employee partner and mailed from  Focus' District of Columbia office to the identified potential investors.  Rodgers Decl. ¶ 6.

Prior to Focus commencing any work on behalf of Zassi, each and all of the foregoing steps in the process, and that they would each be conducted in the District of Columbia, was explicitly explained by Focus' Atlanta GA based employee partner, William O. Inman III ("Inman") to Joseph Walker ("Walker"), Zassi's Chief  Operating

Officer.  Declaration of William O. Inman III, under penalty of perjury ("Inman Decl.") ¶¶ 6 and 9 through 12.

With all of this information in hand, Focus and Zassi entered into an August 30, 2005 written agreement (Affidavit of Joseph Walker filed by Zassi in support of its instant motion ("Walker Aff") ¶34 and Exhibit ("Exh") C.  The Agreement provided for Focus to provide the above described services while seeking out a financial investor for Zassi, and in the event Focus was successful in so doing, for Zassi to pay Focus a fee equal to five per cent of the amount so raised.  Id at Exh C.

Thereafter, Focus assigned its District of Columbia based researcher, Jeffrey A. Anderson ("Anderson") to the Zassi account. Rodgers Decl ¶ 7. Anderson is employed at and performs his services through  Focus' District of Columbia office.  Rodgers Decl ¶ 7; Declaration of Jeffrey A. Anderson under penalty of perjury ("Anderson Decl.") ¶ 2.

Anderson met with various Zassi personnel, introducing himself as Focus' researcher from Focus' District of Columbia office and was given substantial information and documentation, including corporate financial summaries, business and marketing data and plans, executive summaries previously used by Zassi for raising funds, various financial data, power point presentations and various information that Zassi deemed confidential and proprietary, all of which Anderson took back to his office. ¶¶ 5 and 6.

Anderson, after his return, conducted additional research.  Upon completing the additional research, Anderson, principally by email, each of which identified Anderson's office at Focus' offices in the District of Columbia, contacted Zassi with a number of and requests for additional materials. Zassi personnel, including Peter Van Dyck, Zassi's Chief Executive Officer, Walker, Zassi's Chief Operating Officer, Ray Brandstetter,

Zassi's controller, and Chad A. Coberly, Zassi Director of Legal and Regulatory Affairs, who also holds himself out to be an attorney, electronically sent me the requested materials through Focus's District of Columbia office.  Anderson Decl ¶¶ 7 through 10.

Anderson then completed preparation of the draft CIM and circulated to various Focus personnel.  Once the draft CIM had been approved internally, it was submitted to Walker,  Anderson Decl ¶¶ 11 and 12.  Walker then electronically submitted his comments to me via Focus' office via the District of Columbia.  Anderson Decl ¶ 13.

Concurrently with preparing the CIM, Anderson researched from Focus' proprietary data base that is maintained in the District of Columbia and from other sources suitable financial buyers/investors to be contacted to make an investment in Zassi. The schedule of prospective financial buyers was reviewed internally at Focus, submitted to Zassi for comment and approval.  After Zassi's approval was obtained, the schedule of potential financial buyers was prioritized and I understand initial contact letters were sent from Focus' offices in the District of Columbia.   Anderson Decl ¶¶ 14 through 16.   Based upon the relatively poor reception by these investors regarding Zassi, it was suggested, and agreed, that Focus would prepare a list of potential strategic investors/buyers.   It was understood by all parties that if Focus identified a strategic investor/buyer, Focus would be paid its previously agreed fee.[1]  Inman Decl ¶¶ 14 and 15,

At a February 7, 2006 meeting of Zassi's stockholders which I attended, both

---

1.  [1] The difference between a financial source and a strategic source is that a financial source invests money, frequently takes membership on, or even control of, the company's board of directors but generally is not involved in the company's daily operations while a strategic buyer is generally involved in operating a similar company having complimentary products or customers, and is looking to expand its current operations or product lines. Inman Decl ¶ 16.

Walker and Zassi's chief executive officer, Peter Van Dyck ("Van Dyck") confirmed publicly to its shareholders and directors that Focus had been retained to investigate and assist Zassi in its efforts to raise additional capital and that Focus had been instructed to "explore all options."  Inman Decl ¶15.

After the February 7, 2006 meeting, based upon, and in reliance upon, Focus' new agreement with Zassi covering strategic Investors, at Inman's request, Anderson, Focus' District of Columbia based researcher, who had prepared the CIM and the list of financial buyers from Focus' resources, prepared the list of strategic buyers/investors.  Inman Decl ¶ 17; Anderson Decl ¶¶ 17 and 18.

At the beginning of April 2006, Inman asked Walker if, and Walker verbally confirmed to Inman that, Zassi was not then in discussions with any strategic buyers.  In part in reliance upon Walker's confirmation that Zassi was not then dealing with any potential strategic buyers, Inman gave Zassi the list of potential strategic buyers that Focus had prepared through its District of Columbia office.  Inman Decl ¶¶ 18 and 19. At the April 2006 meeting with Walker, Walker instructed Inman that Focus should not contact the strategic buyers because Zassi knew many of them, and, for the time being, Zassi would contact them directly.    Inman Decl. ¶ 20.

After Focus' Chief Executive Officer, Rodgers, learned that Zassi was refusing to pay the fee due Focus for its services in identifying the potential buyer which acquired Zassi's operating product line and related intellectual product, Rodgers placed a telephone call to Peter Van Dyck, Zassi's chief executive officer, CEO to CEO.  Mr. Van Dyck was not available and Rodgers left a message asking that he return my telephone call.  Rodgers Decl. ¶¶ 8 and 9.

Mr. Van Dyck returned Rodgers call and left an extensive detailed message, which was anything but an incidental return call. Rodgers Decl ¶ 10.   For the court's convenience Rodgers had the recorded message transcribed and attach a copy of the transcription to Rodgers' Declaration as Exhibit A.

## ARGUMENT

### This Court has personal jurisdiction over Zassi

Zassi's claims the Court lacks personal jurisdiction pursuant to D.C. Code § 13-423.   Zassi relying on the authority of Cellutech, Inc. v. Centennial Cellular Corp., 871 F. Supp, 46, 48 (D.D.C. 1994) and Novak-Canzeri v. Saud, 864 F. Supp 203 (D.D.C. 1994) asserts that Focus failed to adequately plead the basis for the Court to exercise jurisdiction.  In so doing, Zassi fails to consider the rule that in resolving motions to dismiss under Fed. R. Civ. P 12(b)(2) in considering such motions the court should inquire into affidavits [declarations under penalty of perjury] or otherwise, into the underlying facts, either on the request of a party or sua sponte. Land v. Dollar, 330 U.S. 732 n.4 (1947) overruled on other grounds by Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682 (1949); see, Artis v. Greenspan, 223 F. Supp. 2d 149, 152 (D.D.C. 2002).

Accordingly, Focus respectfully requests that the Court consider additional materials and the submits the separate Declarations, each under penalty of perjury, of Douglas E. Rodgers, William O. Inman and Jeffrey A. Anderson, as Exhibits A., B and C, respectively.  These declarations establish that the Defendant, Zassi, knowingly and willfully conducted business with Focus that was to be, and was, performed in the

District of Columbia, and further, Zassi committed a tortuous act in the District of Columbia thereby causing injury to Focus in the District of Columbia..

D.C. Code  13-423 provides:

(a) A District of Columbia Court may exercise personal jurisdiction over a person, who acts directly or by an agent,, as to any claim for relief arising from the persons—

(1) transacting any business in the District of Columbia;

…

(3) causing tortuous injury in the District of Columbia by an act or omission in the District of Columbia;

The District of Columbia "Long Arm Statute, quoted above, provides for "the exercise of personal jurisdiction to the fullest extent permissible under the due process clause" [of the Constitution.]  Morvales v. Baxter, 434 A. 2d 988, 991 (D.C. Ct. App. 1981) reversing a lower court dismissal for lack of personal jurisdiction.

To establish personal jurisdiction under "D.C. Code §13-423 (a) (1), a plaintiff must demonstrate that (1) the defendant transacted business in the District; (2) the claim arose from the business transacted in the District (so called specific jurisdiction; the defendant had minimum contacts with the District; and (4) the Court's exercise of personal jurisdiction would not offend 'traditional notions of fair play and substantial justice." (cite omitted) Comsat Corp. v.  Finships Yard S.A.M. , 900 F. Supp. 515, 521 (D.D.C. 1995).

In Morvales, the appellate court made it clear that the statutory requirement of transacting business, was not the same as "doing business," in the District. The Morvales court found the engaging the plaintiff, an attorney, in a telephone conversation and the

sending of two letters to the attorney, was sufficient to satisfy the transacting business requirement of the Long Arm Statute.  This is consistent with District's policy of conforming, at least in extent and scope, to the Maryland and Virginia Long Arm Statutes compelling "the conclusion that the 'transacting any business' provision is coextensive with the due process clause." (cites omitted) Id. at 992.  "The transacting of any business provision embraces those contractual activities of a nonresident defendant which cause a consequence [in the District]," citing Rose v. Silver, 394 A.2d 1368 (D.C.  App. 1978), that "the nonresident defendant need not have been in the District", citing Dorthy K. Winston & Co. v. Town of Heights Development, Inc., 376 F. Supp. 1214, 1216 (D.D.C. 1974) and that under certain circumstances, a single act may be sufficient to constitute transacting business in the District of Columbia, citing Bueno v. La Compania Peruana, 375 A. 2d 6, 9 (D.C. App. 1977).

In the case at bar, Zassi when it entered into the August 30, 2005 written contract with Focus (Walker Aff. Exh C) knew that it was engaging Focus to prepare the CIM in the District of Columbia, knew that it was engaging Focus to prepare, in the District of Columbia, a list of potential financial investors to solicit to invest in Zassi, and knew that it was engaging Focus, in the District of Columbia, to send initial contact letters to the target investors.   Zassi knew all these things be Focus' Inman told them to Zassi.  Inman Decl. ¶¶ 9 through 13.   In addition Zassi electronically delivered a substantial volume materials to Focus' Anderson through Focus' office in the District of Columbia. Anderson Decl ¶ 9, 10, 12 and 13 and Exh A.

Zassi has suggested that the transmittals were made by low level clerical type employee.  This suggestion is expressly refuted by Anderson's Declaration identifying

the documents as having been transmitted by Peter Van Dyck, Zassi's Chief Executive Officer, Ray Brandstetter, Zassi's controller, and Chad A. Coberly, Zassi Director of Legal and Regulatory Affairs, who also holds himself out to be an attorney, and by Walker, himself, Zassi's Chief Operating Officer. Anderson Decl ¶ 9. Given these multiple of contacts with Anderson, and deliveries to Anderson, it is disingenuous of Zassi to suggest that Zassi's sole contacts with Focus in the District of Columbia were Van Dyck isolated telephone call and the transmission of one or two documents by a low level Zassi employee.

The CIM was prepared; it was submitted to Zassi's chief operating officer, Walker, for comment and Walker electronically transmitted Zassi's comments to Anderson via Focus' District of Columbia office.   Anderson Decl ¶¶ 12 and 13.

In addition, the Complaint alleges Zassi and Focus subsequently entered into a second contract which called for Focus to prepare, in the District of Columbia, a list of potential strategic investors.  Inman Decl ¶ 14. This schedule was also prepared and delivered to Zassi. Inman Decl ¶ 15.

Focus respectfully submits that the foregoing acts by Zassi constitute "transacting business" in the District of Columbia for the purpose of establishing personal jurisdiction in the District of Columbia as set for the in the cited controlling precedents, for Focus' claims, which derive from Zassi's enumerated acts.

With respect to service of process, Zassi, through counsel, expressly waived personal service thereby satisfying that test.

Focus recognizes that it is incumbent on it to establish that the Court's exercise of jurisdiction over Zassi does not offend the traditional notions of fair play and substantial justice.

In <u>Hanson v. Deckla,</u> 357 U.S. 235 (1958) the Supreme Court wrote that "It is essential in each case that the defendant purposefully avails itself of the privilege of conducting activities within the forum state thus invoking the benefits and privileges of its laws" at 253, and held that by entering into a contract with a resident of the forum state the defendant satisfied the standard.

Accordingly, this test was satisfied when Zassi, knowing, because Inman told Zassi, that Focus had its principal place of business in the District of Columbia.  Inman Decl  10.

Consequently, Focus respectfully submits that, pursuant to D.C. Code § 13-423 (a) (1), this Court has personal jurisdiction over Zassi to hear and determine this case.

In addition, Focus submits that this court has personal jurisdiction pursuant to D.C. Code § 13-423 (a) (3).

The second claim Focus' complaint in this case alleges Zassi committed a tort by unjustly enriching itself to Focus' detriment.

In considering Focus' position in this  regard, the initial question to be addressed is whether Focus' claim of unjust enrichment is  a tort.

Focus has not found any cases in the District of Columbia discussing this issue, nor has found any cases elsewhere discussing this issue in the contest of a motion to dismiss for lack of personal jurisdiction under a long arm statute.

Focus has found authority, in other jurisdictions, that treat claims alleging unjust enrichment as torts.

"Unjust Enrichment Doctrine. The general principal is "that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly. Unjust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another (internal cites omitted). Black's Law Dictionary, (6th Ed. p 1535).

In Annecca Inc. v. Lexent,, Inc., 345 F. Supp. 2d 897, 906 (N.D. Ill 2004) the court, while considering the parties cross motions for summary judgment, on the issue of choice of law, said "The parties agree that Illinois law applies to [the] claims for unlawful conversion and unjust enrichment, tort claims that are not controlled by the choice of law provision in the Agreement, …". In Zwieg v. National Mortgage Bank of Greece, 1993 U.S. Dist. LEXIS 8460 (S.D.N.Y. 1993), the court, when considering a motion to dismiss on basis of forum non conveniens, making reference to Phoenix Canada Oil Co. Ltd. v. Texaco, Inc., 78 F.R.D. 445 (D. DE 1978 ) wrote, "dismissal [is] inappropriate where it is unclear [another] tribunal will hear the case, and where there is no generally codified … legal remedy for the unjust enrichment tort claims asserted"

Focus, recognizing that this appears to be a case of first impression, respectfully submits that Court should find that Focus' claim for unjust enrichment is a tort claim.

Focus submits that, under Focus' second claim, as pleaded in the complaint, Zassi was unjustly enriched at Focus' expense when Zassi, in its telephone message to Focus' to Rodgers in the District of Columbia, disclaimed all obligations to Focus for the benefit Zassi derived from using the strategic list provided by Focus to Zassi as the impetus to enter into an asset sale with Hollister, Incorporated.  Rodgers Decl ¶10 and Exh A.-.

For the reasons stated,, and each of them, Focus respectfully submits the Court has personal jurisdiction over the Defendant,, Zassi Medical Evolutions, Inc. D.C. Code § 13-

**Neither the interests convenience of the parties nor the interests of justice will not be served by a transfer of venue to the United States District Court for the Middle District of Florida**

Zassi has moved, in the alternative, if the Court finds, as Focus submits and believes it will, that the Court has personal jurisdiction over Zassi, for a transfer of venue pursuant to the provisions of pursuant to 28 U.S.C. 1404(a).

Zassi, is so doing, correctly acknowledges that  venue for the action is proper in the District of Columbia, the District of Focus' principal place of business.  Rodgers Decl ¶ 3.  Focus acknowledges that if the Court concludes it lacks personal jurisdiction over Zassi, a conclusion which Focus does believe it should or will reach, the United States District Court is a court having venue.

Zassi correctly cites the factors for the court to consider when ruling on a motion to transfer pursuant to Fed. R. Civ P. 1404(a).

Focus will address each of the factors listed at page 31 in Zassi's Points and Authorities submitted in support of its motion to transfer.

1. The convenience of the parties.

Focus choice of forum, the District of Columbia, the place of Focus's principal place of business is entitled to substantial consideration, although not as much as when the court considers a motion to dismiss.  See <u>Norwood v. Kirkpatrick</u>, 349 U.S. 29 (1955); The plaintiff's choice of forum is significant and should not be disturbed unless the balance of factors weighs heavily in favor of transfer, unless the plaintiff's choice of forum is neither its home district or the pace where the operative facts of the action occurred. <u>Dwyer v. General Motors Corp.</u>, 853 F. Supp. 690 (S.D.N.Y. 1994) citing <u>Seagoing Uniform Corp. v. Texaco, Inc.</u>, 705 F. Supp. 918(S.D.N.Y. 1989) citing <u>Gulf Oil Corp. v Gilbert</u>, 330 U.S. 5012 (1947).

> Where there are only two parties to a dispute, there is good reason why [the case] should be tried in the plaintiff's home forum if that has been his choice.  He should not be deprived if the presumed advantages of his home jurisdiction except upon a clear showing which either (1) establish such oppressiveness and vexation to a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make a trial in the chosen forum inappropriate because of considerations affecting the court's own administrative or legal problems.

<u>Pain v. United Technologies Corp.</u>, 637 F. 2d 775, 782-83 (D.C. Cir. 1980)

Zassi's reliance on <u>Schmidt v. Am. Inst. of Physics</u>, as a basis to reduce Zassi burden for transfer is misplaced.  Zassi suggests that its burden is reduced because the District of Columbia has no meaningful nexus to the controversy and the parties. Zassi is in error.  The District of Columbia, Focus' selected forum, is Focus' home district. Rodgers Decl ¶ 3.

Zassi's reliance on <u>Thermal Technologies, Inc. v. Dade Service Corp.</u>, 282 F. Supp, 2d 1373, 1376-77 is misplaced.  In <u>Thermal</u>, the action was not commenced in the plaintiff's home jurisdiction so its choice of forum, quite correctly, was not entitled to

significant deference. Id at 1375-76In addition, the plaintiff conceded that it would be equally inconvenient for plaintiff to maintain the case in the Southern District of Florida as it would be to maintain the case in the Middle District of Florida,  Simply put, that is not the case before this court.  This case was filed in Focus' home district, the District of Columbia.  Focus has <u>not</u> conceded that it will be equally inconvenient for Focus to maintain this case in the Middle District of Florida as it is for Focus to maintain the case at its home district, the District of Columbia.

    <u>2. Convenience of Parties</u>.

    Although Zassi claims that it would be "manifestly inconvenienced", were the case to remain in the District of Columbia, claiming Zassi would be required to send numerous employees to the District for what may be a lengthy stay, it fails to identify the "numerous employees, the substance of what they have to offer in testimony.  It also raises the specter of its "complex business concerns," but proffers no evidence of what are these concerns.

    It must be noted that none of these "concerns' rise to the level of vexatious. Focus appreciates Zassi's concern for the convenience of Focus' employees who reside in Florida, but it is of no moment. Focus has chosen its home forum and desires to, and is entitled to, maintain this action in the District of Columbia.

    <u>3. The convenience of witnesses</u>

    Although Zassi has not specifically identified the witnesses who may be inconvenienced, it has categorized them as Focus' personnel, Zassi's personnel, and some Zassi stockholders.  It, for whatever reason has not mentioned Hollister International's employees.  The convenience of a party's employees, and of persons closely aligned with

a party is given less weight than the convenience of non-party witnesses.  Moore's, Fed. Practice § 111.13(iii).  In some courts, they are given no weight at all.  See, S-Fer Intern. , Inc. v. Paladin Partners, Ltd., 906 F. Supp. 211, 215 (S.D.N.Y. 1995);McEvily v. Sunbeam-Oster, 878 F. Supp. 337, 346 (D. R.I. 1994);  Grundle Lining Const. Corp. v. Fireman's Fund Ins. Co., 844 F. Supp. 1163, 1165 (S.D. Tex 1994); U.S. Fidelity & Guar. Co. v. Republic Drug Co. , 800 F. Supp. 1076, 1082 (E.D.N.Y. 1992).  The Court in considering the convenience of witnesses is charged with weighing the materiality of their testimony.  Schiedt v. Klein, 956 F. 2d 963, 966 (10th Cir 1992). Absent a showing of what the anticipated testimony will be, the court can not determine the materiality of such testimony and can not give any weight to it.  Id.; Pilates, Inc. v. Pilates Institute, Inc. , 891 F. Supp. 175, 183 (S.D.N.Y. 1995).

Zassi has not indicated who the unrelated witnesses are, nor has it stated what testimony it expects to elicit from such witnesses.

Consequently, Zassi is not entitled to have any weight given to such testimony.

Focus does believe there is an unrelated witness, Hollister International Corp, ("Hollister") which may have relevant testimony and documents that Focus believes will be material.  However, since Hollister is in Chicago Illinois, it would have to travel to either this Court or the proposed transferee court and not be subject to the subpoena power of either court, now weight should be given to this factor.

4. The location of documents

Zassi is in error when it states that all relevant documents are either in its files in Florida or in Mr. Inman's electronically maintained files in Florida.  Initially, Focus respectfully submits the Court should take judicial notice that all electronically stored are

readily electronically transmitted anywhere and everywhere. Focus submits that this Court's, in fact most, if not all, United States District Courts, adoption of electronic filing of all motions, supporting affidavits and exhibits, substantiates the fact that all documents are readily transmitted everywhere. Even where this not true, given the relative ease of transporting documents, physical the location of documents is a relatively less impotant consideration. Pennwalt Corp. v. Purex Industries, Inc., 659 F. Supp. 287, 290 (D. Del 1986). In this case, this conclusion is further reinforced where there is no indication that the documents in question are particularly voluminous. Focus respectfully submits that given Zassi's history of having previously transmitted records and documents to Anderson (see Anderson Decl ¶ 10) it is highly likely that whatever Zassi documents are relevant to the issues in this case such documents are, or will be, readily available in electronic form, which should, if not eliminate altogether, cause this factor to be of negligible weight in the court's consideration.

### 5. The interests of justice

Zassi's reliance on Amazon v. Cendnt Corp. 404 F. Supp. 2d 1256, 1261 (W.D. WA 2005) is misplaced.

Although Zassi accurately quotes from the decision, it fails to give consideration to all of the factors the Amazon court weighed and found in favor of transfer, none of which exist in this case now before this Court. For example, in Amazon, all parties, plaintiffs and defendants were incorporated in the same state, Delaware;[2] there was a related case pending in Delaware, while in the case at bar, there is no such case pending in the proposed transferee court, or for that matter, anywhere else..

---

[2] The court's jurisdiction was founded on claims of patent infringement, not diversity.

Zassi begs the issue when it states Florida law will control this case and suggests transfer is appropriate because the District of Columbia either cannot, or will have difficulty, properly applying Florida law.

First, Focus recognizes many of the facts to be considered by the court occurred in Florida the parties did not enter into a choice of law agreement in 2006, and even the August 2005 Contract (Walker Aff Exh C) does not contain a consent to jurisdiction or venue in Florida.

Of paramount import is the fact that Zassi's unjust enrichment (Focus' Second Claim) took place in the District of Columbia when Zassi's Chief Executive Officer, Mr. Van Dyck, in his telephone message to Rodgers left in the District of Columbia, disavowed any obligation to Focus for the services Focus had performed for Zassi, which identified Hollister as a strategic buyer of Zassi and certainly facilitated Zassi stimulation of Hollister's interest in acquiring the Zassi product line.  Rodgers Decl ¶ 10 and Exh A; Complaint.

In sum, the factors in favor transfer weigh no more heavily than the factors against transfer of venue.  This is especially so given the strong weight that must be given a plaintiff's choice when there are, as is the case here, only two parties to the action.

## CONCLUSION

Focus respectfully submits, that for the reasons above stated, and each of them, this Court has personal jurisdiction over the Defendant to hear this case, and that under the applicable standards the Defendant has not satisfied its burden  to warrant a transfer of venue to the United States District Court for the Middle District of Florida.

Accordingly Focus submits that Zassi's instant motion to dismiss for lack of personal jurisdiction and/or to transfer venue to the United States District Court for the Middle District of Florida should be denied, in all respects.

Respectfully submitted,

/s/ GORDON LOCKE
Gordon Locke
D,D.C. Bar # NY 0740
74 Sheldrake Place
New Rochelle, NY 10804
Tel::914-632-8568
Fax: 914-654-8226
Attorney for Plaintiff

# DECLARATION OF DOUGLAS E RODGERS, UNDER PENALTY OF PERJURY

EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

FOCUS ENTERPRISES, INC.

*Plaintiff*

CASE NO.   1:06cv02068 (GK)

-*against*-

ZASSI MEDICAL EVOLUTIONS, INC.

*Defendant*

## DECLARATION OF DOUGLS E. RODGERS, UNDER PENALTY OF PERJUY

DOUGLAS E. RODGERS, declares under penalty of perjury, as follows:

1. I am over 21 years of age and have personal knowledge of the facts set forth herein.

2. I am a shareholder of Focus Enterprises, Inc. ("Focus") and its chief executive officer.

3. Focus is a Virginia corporation headquartered in the District of Columbia, is a middle market investment banking firm sometimes operating as a finder, with offices in the District of Columbia and branches in San Francisco California, Chicago Illinois and Atlanta Georgia.

4. In the ordinary course of Focus' business, Focus, for each of its clients has Focus' research department, at Focus' offices in the District of Columbia research and write a Confidential Investment Memorandum (the "CIM") and research suitable target companies from Focus' extensive data base that is maintained at Focus' office in the District of Columbia, to contact to make the investment. Focus then presents the list to the client for its approval or modification.

5. Concurrently with the preparation of the CIM, Focus, again at its offices in the District of Columbia prepares an individualized initial contact letter for the purpose of stimulating interest in an investment in the client. This letter is also generally subject to review and editing by the client.

6. After the initial contact letter is approved by the client, the letters would be individually prepared in Focus' District of Columbia Office, electronically signed by Focus' relationship employee partner and mailed, to the identified potential investors.

7. Jeffrey Anderson, Focus' researcher who was assigned to the Zassi account is employed at Focus' District of Columbia office and performs his services through Focus' District of Columbia office.

8. After I learned that Zassi was refusing to pay the fee due Focus for its services in identifying the potential buyer which acquired Zassi's operating product, I placed a telephone call to Peter Van Dyck, Zassi's chief executive officer, CEO to CEO.

9. Mr. Van Dyck was not available and I left a message asking that he return my telephone call.

10. Mr. Van Dyck returned my call and left an extensive detailed message, which was anything but an incidental return call. For the court's convenience I have had the recorded message transcribed and attach a copy of the transcription to this declaration as Exhibit A. For the record, I have compared the transcription to the recording and the transcription is a true and accurate recitation of Mr. Van Dyck's message.

Declared under penalty of perjury, this 7th day of March 2007.

Douglas E. Rodgers

Doug Rodgers received this message from Peter Von Dyk on …. At …

Katy Fox, Office Manager, Focus Enterprises, transcribed this message on Thursday, February 22, 2007 at 10:56 AM.

2/22/2007, 9:57 AM Doug forwarded message to Katy.

"Hello Mr. Rodgers this is uh Peter Von Dyk from Zassi Medical Evolutions. I just got your voicemail. I'm in Europe now until the (uh) third of October. So, I'm not sure if you're getting this message late, but I did want to respond to your voicemail.

Umm, basically in a nut shell yeah of course I agree with you that Bill Inman is conflicted and that might be another source of other legal issue there, but overall, of course we, unfortunately, completely disagree with your claims of values anything. Uh, we can demonstrate that we had to take this deal because you guys have basically failed to, uh, help us even solicit any genuine interest in venture capital. Uh, actually in our five years of raising capital the deals, the two deals that weren't even deals, basically just leads that were brought to the table were, uh, of the worst caliber in our history unfortunately. Uh, I have the utmost respect for George as an individual, but no medical advice background I think unfortunately showed in this area and we actually had the venture capitalist tell us writing they did not know who Focus was and uh did not have a respect for your group nor wanted your group's involvement uh, in (in) raising money. We, uh, that was actually a significant issue for us to overcome with these, uh, these venture capital folks, these two in particular. Obviously no term sheets were ever developed and no discussions involving Holister ever entailed your group, so we're willing to go the distance here if you believe you want to pursue legal matters. Um, of course I hope that's not the case and we have many deals to make in the future and we could do them with you, perhaps.

Umm, obviously, uh, nothing turned out positive in this matter, um and that was unfortunate. We had a big run way where with thought we could raise money and stay independent not to make a deal with Holister, um, but of course we failed to mature any deals with Focus Group. So, uh, (I'll be) I'm passing your (your) issue on to, if you want, to my attorneys, uh and you can call me of course on the third. I'm all for working this out amicably, but uh, just so you're clear on my position, it was, uh (uh), a flaming miserable, uh, event here with Focus Group. Um, we tried hard and I think there was good intent of course but never any strategic involvement with any strategic players, uh, and (and) pretty dismal leads brought to the table if (if) you could even call 'em that, unfortunately. Um, so again, um, my best to George and knowing them, but (um) this is uh this is a pretty bad situation. So again, uh we hope too that we can avoid any legal actions but if that's what it will take I'm willing to go there. So, please let me know what you'd like to do next.

I'll be back on the third and I do want to work this out amicably if you would like to, but um, again, um this did not work out as planned in any respect with your group on the venture capital side. So, uh again you can reach me at e-mail p (dot) vondyk (v-o-n-d-y-

k)@zasimedical.com and (we can) I'll respond that way or please feel free to leave me another voicemail, we can talk that way.  Perhaps I can even call you back during your daily working hours and we can talk this out. So, again, I look forward to talking soon. Thanks."

End of message.

EXHIBIT A

# DECLARATION OF WILLIAM O. INMAN, III, UNDER PENALTY OF PERJURY

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

FOCUS ENTERPRISES, INC.

*Plaintiff*                    CASE NO.   1:06cv02068 (GK)

-*against*-

ZASSI MEDICAL EVOLUTIONS, INC.

*Defendant*

## DECLARATION OF WILLIAM O. INMAN, III, UNDER PENALTY OF PERJUY

WILLIAM O.  INMAN, III, declares under penalty of perjury, as follows:

1. I am over 21 years of age, am an employee, partner, in Focus Enterprises, Inc.
   ("Focus"), the Plaintiff in the captioned action, and make this Declaration of facts
   personally know to me,

2. During 1996 I, after many years practicing public accounting, established a small
   investment banking firm, the Inman Company. The Inman Company, in __, was
   retained by Zassi Medical Evolutions, Inc. ("Zassi") the Defendant, in the
   captioned action, to assist Zassi in raising capital.

3. I was successful in my effort to assist Zassi in raising capital for its operations
   and was compensated for such services in warrants to purchase shares of Zassi
   common stock.

4. During early 2005, I closed down The Inman Company's operations and joined
   Focus as an employee/partner.

5. Focus is a Virginia corporation headquartered in the District of Columbia, is a
   middle market investment banking firm operating, with offices in the District of

Columbia and branches in San Francisco, California, Chicago, Illinois and Atlanta Georgia.

6. I joined Focus to work out of, and to this day continue to work out of, and report to George Shea, Focus" regional manager in, Atlanta Georgia.

7. My duties at Focus, were then, and remain today, to solicit prospective clients for Focus' investment banking services, as well as to consummate transactions. When I joined Focus, I contacted Joseph Walker ("Walker"), Zassi's chief operation officer and informed him of my move to Focus, and of Focus' business and operations, as above described below, and that Focus had 24 partner employees, who are primarily former chief operating officers or chief executive officers of companies throughout the United States, with personal contacts of thousand of potential investors, financial and strategic.

8. In the performance of my duties, I travel extensively (perhaps 50% or more of the time), and for my convenience, when I am not on he road, I share office space in Jacksonville FL.

9. During the summer of 2005, I learned from Walker that Zassi was seeking to raise additional funding and, during a conversation with Walker I suggested Zassi engage Focus to assist Zassi in raising the funds.

10. I told Walker that Focus' research department, at Focus' offices in the District of Columbia, would prepare a Confidential Investment Memorandum (the "CIM") and would research suitable target companies to contact regarding an investment in Zassi.  Focus would then present the list to Zassi for its approval or modification.

11. Concurrently with the preparation of the CIM, Focus, again at its offices in the District of Columbia, would prepare an individualized initial contact letter for the purpose of stimulating interest in Zassi. This letter also would be subject to review and editing by Zassi.

12. After the initial contact letter was approved by Zassi, the letters would be individually prepared in Focus" District of Columbia Office, electronically signed by me and mailed from the District of Columbia office to the identified potential investors.

13. After the initial contact list of potential financial investors was prepared and letters sent, George Shea and I made calls to each prospect.

14. Based upon the relatively poor reception by these investors regarding Zassi, it was suggested and agreed, that we broaden our search to include strategic investors.

15. At a February 7, 2006 meeting of Zassi's stockholders which I attended, both Walker and Zassi's chief executive officer, Peter Van Dyck ("Van Dyck") confirmed publicly to its shareholders and directors that Focus had been retained to investigate and assist Zassi in its efforts to raise additional capital and that Focus had been instructed to "explore all options" .

16. The difference between a financial source and a strategic source is that a financial source invests money, frequently takes membership on, or even control of, the company's board of directors but generally is not involved in the company's daily operations while a strategic buyer is generally involved in operating a similar company having complimentary products or customers, and is looking to expand its current operations or product lines.

3

17. After the February 7, 2006 meeting, based upon, and in reliance upon, Focus' new agreement with Zassi covering strategic Investors, at my request, Focus' District of Columbia based researcher, Jeffrey Anderson ("Anderson") who had prepared the CIM and the list of financial buyers from Focus' resources, prepared the list of strategic buyers.

18. At the beginning of April 2006, and in anticipation of contacting all targeted investors, financial AND strategic, I asked Walker if, and Walker verbally confirmed to me that, Zassi was not then in discussions with any strategic buyers.

19. In part in reliance upon Walker's confirmation that Zassi was not then dealing with any potential strategic buyers, I gave Zassi the list of potential strategic buyers that Focus had prepared through its District of Columbia office.

20. Also at the April 2006 meeting with Walker, Walker instructed me that Focus should not contact the strategic buyers on behalf of Zassi because Zassi knew many of them, and, for the time being, Zassi would contact them directly.

Declared under penalty of perjury, this _ day of March 2007.

William O. Inman III

# DECLARATION OF JEFFREY A ANDERSON, UNDER PENALTY OF PERJURY

EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

FOCUS ENTERPRISES, INC.

                    *Plaintiff*                    CASE NO.   1:06cv02068 (GK)

        -*against*-

ZASSI MEDICAL EVOLUTIONS, INC.

                    *Defendant*

## DECLARATION OF JEFFREY A. ANDERSON, UNDER PENALTY OF PERJUY

JEFFREY A, ANDERSON, declares under penalty of perjury, as follows:

1. I am over 21 years of age, am employed as an independent contractor by Focus Enterprises, Inc. ("Focus"), the Plaintiff in the captioned action, and make this Declaration of facts personally know to me.

2. I perform my duties and services as a researcher for Focus at Focus' offices in the District of Columbia and by telecommuting to Focus' offices in the District of Columbia.

3. I perform my services and am compensated on a per project basis.

4. My duties and services include, without limitation, researching and collecting information about Focus' client, in this instance, Zassi Medical Evolutions, Inc. ("Zassi") and potential investors for the client, financial and/or strategic, depending upon the charge given to me.

5. In the case of Zassi, at an October 27, 2005 meeting with Zassi, at which I introduced myself as Focus' researcher from its District of Columbia office who would be researching and preparing a Confidential Information Memorandum

("CIM"), I was given a variety of information and documentation directly by Zassi, including corporate financial summaries, business and marketing data and plans, executive summaries previously used by Zassi for raising funds, various financial data, power point presentations and various information Zassi deemed confidential and proprietary.

6.  I took all of this information and documentation back with me and then conducted additional research regarding Zassi and its competitors.

7.  When I completed this, I contacted Zassi with a number of questions and requests for additional materials, principally by email.

8.  Each of my emails to Zassi identified my office at Focus' offices in the District of Columbia.

9.  Zassi's personnel, including Peter Van Dyck, Zassi's Chief Executive Officer, Joseph Walker, Zassi's Chief Operating Officer, Ray Brandstetter, Zassi's Controller, and Chad A. Coberly, Zassi's Director of Legal and Regulatory Affairs, who also holds himself out to be an attorney.

10. Each of executives and managers identified in paragraph 9 above sent me, electronically, through Focus' office in the District of Columbia, documents in response to my electronically submitted (email) requests. Attached as Exhibit A is a list of some of the documents so sent to me.

11. I then completed preparation of the draft CIM and circulated to various Focus personnel.

12. Once the draft CIM had been approved internally, it was submitted to Walker,

13. Walker then electronically submitted his comments to me via Focus' office in the District of Columbia.

14. Concurrently with preparing the CIM, I researched from Focus' proprietary data base that is maintained in the District of Columbia and from other sources suitable, financial buyers/investors to be contacted to make an investment in Zassi.

15. The schedule of prospective financial buyers was reviewed internally at Focus, submitted to Zassi for comment and approval

16. After Zassi's approval was obtained, the schedule of potential financial buyers was prioritized and I understand initial contact letters were sent from Focus' offices in the District of Columbia.

17. During February 2006, Focus' Bill Inman and George Shea told me that Zassi had requested that a list of strategic buyers should be prepared.

18. Again, from Focus' data base that is maintained in the District of Columbia, I prepared a list of potential strategic buyers for contact on behalf of Zassi.

Declared under penalty of perjury this 07 day of March, 2007.


Jeffrey A. Anderson

Schedule A

Documents Furnished by Zassi to Jeffrey A Andersen

1. Product Comparison,  Zassi BMS and Flexi-Seal FMS dated April 12. 2005

2. Zassi Patent and Trademark Portfolio

3. Zassi Pro Forma Income Statement 2005-2009

4. Zassi Current Profile & Future Outlook

5. Zassi Consolidated Revenue-EBITDA

6. Zassi Total Revenues 2005-2009

7. Zassi, Total Revenue 2005-2009

8. Copy of Medical Device Daily (Sent by American Health Consultants to Peter
   Von Dyck

9. Copy of Draft January 2006 Draft CIM marked for edits by Joe Walker

10. Zassi, Patent Claim Assessment

11. Zassi, System Sales and Marketing Plan

12. Zassi Organization Chart

13. Zassi Organization Chart

14. Comment from Zassi's Joseph Walker on the draft Confidential Information
    Memorandum

EXHIBIT A