UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FOCUS ENTERPRISES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No: 06-2068(GK) |
| ) | |
| ZASSI MEDICAL EVOLUTIONS, INC.,) | Status Conference Scheduled |
| ) | November 14, 2007, at 10:00 am |
| Defendant. ) | |
| ) | |

**DEFENDANT'S REPLY MEMORANDUM REGARDING
PERSONAL JURISDICTION AND TRANSFER**

Defendant, Zassi Medical Evolutions, Inc. ("Zassi"), pursuant to Rule 7, Local Rules for the District of Columbia, hereby submits its reply to the Plaintiff's Point and Authorities Submitted in Opposition to Defendant's Motion to Dismiss for Lack of Jurisdiction and/or for Transfer of Venue ("Opposition Mem.") (Doc. 8).

Transacting Business

A careful review of Focus Enterprises, Inc.'s ("Focus") opposition papers reveals that Focus has pinned its jurisdictional hopes on the single voice-mail message left by Zassi's Chief Executive Officer, Peter von Dyck, with Focus' Chief Executive Officer, Doug E. Rodgers (Opposition Mem. at 5-6, 17). That is to say, the remainder of the "factual"

bases for Focus' support for personal jurisdiction arises, if at all, out of the eight-page written agreement dated August 30, 2005 ("Written Agreement"),[1] not the alleged oral agreement (Opposition Mem. at 8). The Declaration of Mr. Rodgers establishes that Mr. von Dyck's voice-mail message is irrelevant to the jurisdictional analysis:

> 8. <u>After I learned that Zassi was refusing to pay the fee due Focus for its services in identifying the potential buyer which acquired Zassi's operating product</u>, I placed a telephone call to Peter Van [sic] Dyck, Zassi's chief executive officer, CEO to CEO.
>
> 9. Mr. Van [sic] Dyck was not available and I left a message asking that he return my telephone call.

---

[1] There is a substantial question of whether Zassi's contacts in connection with the Written Agreement were even with the District or whether they were with Virginia (Walker Aff. ¶ 42). Focus does not refute the claim that its researcher, Jeffrey A. Anderson, performed most of his work outside the District, but, instead, carefully contends that Mr. Anderson "telecommut[es]" to Focus' offices in the District (Anderson Decl. ¶ 2). Moreover, Mr. Anderson is not correct when he says: "Each of my emails to Zassi identified my office at Focus' offices in the District of Columbia" (Anderson Decl. ¶ 8). Mr. Anderson sent emails to Zassi from his email account at The Alleris Group based in Vienna, Virginia (<u>see, e.g.</u>, Walker Supp. Aff. ¶ 4-5, attached hereto as Exhibit "A").

>   10. Mr. Van [sic] Dyck returned my call
>   and left an extensive detailed message .
>   . . .

(Emphasis added).  See News World Communications, Inc. v. Thompsen, 878 A.2d 1218, 1223-25 (D.C. 2005)(recognizing the split of authority regarding whether a cause of action for unjust enrichment accrues upon presentment and rejection of a bill or as soon as the services have been rendered, and adopting the latter approach).  Since at the time Focus received Mr. von Dyck's voice-mail message Focus already knew that Zassi did not intend to pay Focus any commission based on the sale of certain assets to Hollister, Inc., it cannot be said that Focus' claims arise from Mr. Von Dyck's telephone call into the District.  Thus, Focus cannot establish jurisdiction under the "transacting business" clause of the District's long-arm statute.[2]

In an effort to overcome the fact that Zassi's only contact with the District regarding the alleged oral

---

[2] Although Focus did not substantively address how the exercise of personal jurisdiction in this case comports with the Due Process Clause, there is no serious dispute that traditional notions of fair play and substantial justice would not permit a party, after a cause of action has accrued, to lure an opposing party to make contacts with a foreign forum to establish personal jurisdiction in that forum.  See Staton v. Looney, 704 F.Supp. 303, 304 (D.D.C. 1989).

agreement was Mr. von Dyck's return voice-mail message, Focus falsely claims:

> In addition, the Complaint alleges Zassi and Focus subsequently entered into a second contract <u>which called for Focus to prepare, in the District of Columbia, a list of potential strategic investors</u>. Inman Decl. ¶ 14. This schedule was also prepared and delivered to Zassi. Inman Decl. ¶ 15.

(Opposition Mem. at 9) (emphasis added). This is the only discussion of the alleged oral agreement in Focus' argument section regarding whether Zassi transacted business in the District (Opposition Mem. at 7-9). The underlined portion of the quote is not supported by the allegations of the Complaint or the Declaration of William O. Inman. Instead, when presented with the opportunity to describe the details and circumstances surrounding the alleged oral agreement, Mr. Inman, in paragraph 14 of his Declaration, vaguely says:

> Based upon the relatively poor reception by these investors regarding Zassi, it was suggested and agreed, that we [Focus] broaden our search to include strategic investors.

Not only does Mr. Inman fail to identify who from Zassi agreed to have Focus solicit strategic investors, when and

4

where this discussion occurred, or even whether compensation was discussed, there is no mention, and no evidence, that the alleged oral agreement "called for Focus to prepare, in the District of Columbia, a list of potential strategic investors."

What is clear from the declarations submitted by Focus is that Focus' timeline of events regarding the alleged oral agreement is implausible. Mr. Inman claims that he gave the list of strategic investors to Zassi in April of 2006 only <u>after</u> Zassi confirmed that "Zassi was not then in discussions with any strategic buyers" (Inman Decl. ¶¶ 18-19), yet there is no reference to communications between the parties regarding the list of strategic investors in the Declaration of Jeffrey A. Anderson. A reasonable person would expect Mr. Inman to have confirmed that Zassi was not already in negotiations with strategic investors several months earlier when the alleged oral agreement was reached between the parties, not after the list had been prepared. It is also curious that had the parties reached an oral agreement several months prior to April of 2006, Focus would only provide the list if Zassi confirmed that Zassi was not negotiating with strategic investors (Inman Decl. ¶ 18-19).

As a point in fact, Zassi negotiated directly with Hollister during late 2005 through September of 2006 (Walker Aff. ¶ 57). Finally, if the list of strategic investors was presented for Zassi's approval or modification as was the list of investors pursuant to the Written Agreement (Opposition Mem. at 2, 4), then it is safe to conclude that Zassi did not approve of the list when it advised Focus not to contact any strategic investors because Zassi already knew many of them (Opposition Mem. at 5).

## Tortious Injury

Notwithstanding the fact that it has brought an unjust enrichment claim "in the alternative" to its claim for breach of an oral agreement,[3] Focus requests that this Court treat the unjust enrichment claim as a tort for purposes of exercising personal jurisdiction (Opposition Mem. at 10-12). As discussed below, this Court should reject Focus' invitation to create new law.

---

[3] See the Preliminary Statement, the heading for the "Second Claim" on page 9, and paragraph 43 (which impermissibly incorporates the contract claim into the unjust enrichment claim) of the Complaint.

First, Florida and District of Columbia law categorize an unjust enrichment claim as quasi-contract, not tort. See, e.g., CDS & Assocs. of Palm Beaches, Inc. v. 1711 Donna Road Assocs., Inc., 743 So.2d 1223, 1224 (Fla. 4th DCA 1999); Williams v. Bear Stearns & Co., 725 So.2d 397, 400 (Fla. 5th DCA 1998)(holding that an unjust enrichment claim fails upon the showing of an express contract between the parties); Commerce Partnership 8098, Ltd. v. Equity Contracting Co., 695 So.2d 383, 386 (Fla. 4th DCA 1997) ("To describe the cause of action encompassed by a contract implied in law, Florida courts have synonymously used a number of different terms - 'quasi-contract,' 'unjust enrichment,' . . . ."); ThunderWave, Inc. v. Carnival Corp., 954 F.Supp. 1562, 1566 (S.D. Fla. 1997)("The economic loss doctrine bars a plaintiff's recovery of purely economic damages under a *tort* theory, and a claim for unjust enrichment sounds in quasi-contract, not tort."); Ellipso, Inc. v. Mann, 460 F.Supp.2d 99, 104 (D.D.C. 2006)("An unjust enrichment action, on the other hand, involves a quasi-contract, a contract implied in law."); Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co., 870 A.2d 58, 63 (D.C. 2005)("Quasi contracts are not contracts at all, although they give rise to obligations more akin to those stemming from contract than from tort.")

(citation omitted); <u>4934, Inc. v. District of Columbia Dep't of Employment Servs.</u>, 605 A.2d 50, 55 (D.C. 1992)("The modern law of unjust enrichment and restitution has its roots in common law concept of quasi-contract. . . . From the beginning a quasi-contract has been openly acknowledged to be a '[l]egal fiction invented by common law courts to permit recovery by contractual remedy . . . .'") (citations omitted).

Second, the cases cited by Focus do not support its contention that unjust enrichment is a tort for purposes of analyzing personal jurisdiction questions (Opposition Mem. at 11). Focus blindly quotes "unjust enrichment tort claims" from the parenthetical used by the court in <u>Zweig v. Nat'l Mortgage Bank of Greece</u>, No. 91 CIV 5482(CSN), 1993 WL 227663, at *8 (S.D.N.Y. June 21, 1993), to describe the holding in <u>Phoenix Canada Oil Co. v. Texaco, Inc.</u>, 78 F.R.D. 445 (D. Del. 1978). There is no question, however, that the court in <u>Phoenix Canada</u> differentiated between tort claims and unjust enrichment for the purpose of determining whether to dismiss the case based on forum non conveniens when it wrote:

> Finally, even if an Ecuadorian tribunal will hear the case, jurisdiction is had over all defendants, and plaintiff financially is able to proceed in Ecuador, <u>it appears that no generally codified Ecuadorian legal remedy exists for unjust enrichment <b>or</b> the tort claims asserted here</u>.

78 F.R.D. at 456 (emphasis added). It appears that the <u>Zweig</u> court inadvertently omitted the word "or" when describing the types of claims at issue in <u>Phoenix Canada</u>.

Moreover, the court's statement in <u>Annecca Inc. v. Lexent, Inc.</u>, 345 F.Supp.2d 897 (N.D. Ill. 2004), implying that unjust enrichment may be considered a tort claim merely recognizes that, under Illinois law, an unjust enrichment claim may be predicated on either contract or tort. <u>See Peddinghaus v. Peddinghaus</u>, 692 N.E.2d 1221, 1225 (Ill. App. Ct. 1998) (involving an unjust enrichment claim arising out of fraudulent inducement). The significance of this distinction, under Illinois law, appears to be limited to the delineation of the circumstances which allow a plaintiff to bring both a breach of contract and unjust enrichment claim. <u>See</u> <u>ShopLocal LLC v. Cairo, Inc.</u>, No. Civ. A. 05 C 6662, 2006 WL 495942, at *2 (N.D. Ill. February 27, 2006) ("Applying these rules, a plaintiff may sue for both breach of contract

9

and unjust enrichment when: (1) the unjust enrichment claim is based on tort; or (2) the two claims are pled in the alternative."). Even if Florida or the District's law recognized the distinction made under Illinois law, which they appear not to do, in the present case Focus has not alleged any tortious conduct, but instead, brings its unjust enrichment claim "in the alternative" to, and based on the same facts as, the contract claim.

Finally, Zassi's research has revealed one court which has rejected an argument similar to Focus' in this case. In Kinetic Co. v. BDO EOS Svetovanje, d.o.o., 361 F.Supp.2d 878, 883-84 (E.D. Wis. 2005), the court rejected the plaintiff's argument that the clause of Wisconsin's long-arm statute requiring tortious injury supported the exercise of personal jurisdiction over defendants in connection with a claim for unjust enrichment. The court noted that the case "relates to the parties' attempt to form a contractual relationship to govern the consultative services provided by EOS to Kinetic." Id. at 884. Likewise, Focus' alternative unjust enrichment claim is predicated on the parties' failure to form a contractual relationship.

<u>Transfer</u>

The only point raised by Focus relating to transfer which merits discussion is the convenience of third-party witnesses.  Focus argues that because Zassi has not identified the shareholders who attended the February 7, 2006 shareholder meeting in Florida, which appears to be the centerpiece of Focus' claims, or what testimony Zassi expects to elicit from such shareholders, the Court cannot provide any weight to this factor in determining whether to transfer the action (Opposition Mem. at 14-15).  This argument is disingenuous at best.  Not only did Focus' representatives attend the meeting (and therefore are in as good a position to identify the shareholders in attendance), the shareholder witnesses will testify as to their respective recollections of what was said at the meeting.  In any case, Zassi identified the residences of these witnesses: Florida, Georgia, and one in Alabama.  The convenience of these witnesses is the important consideration for determining whether this matter should be transferred, and, here, Florida is simply more convenient than the District.

Conclusion

For the foregoing reasons and, in part, because Focus has failed to rebut the substantial majority of the facts set forth in the Affidavits of Joseph R. Walker and Peter von Dyck, this Court should dismiss the Complaint for lack of personal jurisdiction and/or transfer the action to the United States District Court for the Middle District of Florida, Jacksonville Division.

>KIRKLAND & ELLIS LLP
>
>By:   /s/ Thomas A. Clare
>      Thomas A. Clare
>      DC Bar No. 461964
>      655 Fifteenth Street, NW, 12th Floor
>      Washington D.C. 20005
>      Telephone:  (202) 879-5000
>      Facsimile:  (202) 879-5200
>      Email: tclare@kirkland.com
>
>        - and -
>
>BEDELL, DITTMAR, DEVAULT, PILLANS & COXE, P.A.
>
>      Patrick P. Coll
>      Florida Bar No. 0084670
>      Kevin B. Cook
>      Florida Bar No. 507474
>      101 East Adams Street
>      Jacksonville, Florida 32202
>      Telephone:  (904) 353-0211
>      Facsimile:  (904) 353-9307
>      E-Mail: pcoll@bedellfirm.com
>      E-Mail: kcook@bedellfirm.com
>
>Attorneys for Zassi Medical Evolutions, Inc.

```
                 UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA


FOCUS ENTERPRISES, INC.,      )
                              )
          Plaintiff,          )
                              )
v.                            )   Civil Action No: 06-2068(GK)
                              )
                              )
ZASSI MEDICAL EVOLUTIONS, INC.,)
                              )
          Defendant.          )
                              )
                              )
```

### SUPPLEMENTAL AFFIDAVIT OF JOSEPH R. WALKER

```
STATE OF FLORIDA    )
                    ):ss
COUNTY OF NASSAU    )
```

Before me, the undersigned authority, this day personally appeared Joseph R. Walker who, after being first duly sworn, deposes and says as follows:

1. I, Joseph R. Walker, am over the age of eighteen and am qualified to give this affidavit.

2. The information contained herein is based on my personal knowledge.

3. This affidavit is in support of Zassi's Motion to Dismiss the Complaint and/or Transfer the Action and is a supplement to my previous affidavit.

4. On or about February 1, 2006, I received a series of emails from Jeffrey Anderson, a copy of which is attached as Exhibit A.

5. These emails identified Mr. Anderson's contact information as:

> The Alleris Group
> Box 1718
> Vienna, Virginia, 22183
> 703.938.7418 (w)
> 703.868.8705 (c)

6. These emails also identified two email addresses for Mr. Anderson: (1) jeffrey.anderson@alleris.com and (2) jeffreya_anderson@yahoo.com.

FURTHER AFFIANT SAYETH NOT.

_Joseph R. Walker_
Joseph R. Walker

    Sworn to and subscribed before me this 19th day of March, 2007. The affiant is (✓) personally known to me or ( ) produced a current _____ Driver's License as identification.

NOTARY PUBLIC, STATE OF FLORIDA

_Ashley C. McCarroll_
Signature

[Notary Seal: ASHLEY C. MCCARROLL, MY COMMISSION # DD 618933, EXPIRES: December 3, 2010, Bonded Thru Notary Public Underwriters]

Name (typed, printed or stamped)
Commission No. 618933
My Commission Expires: 12/3/10

3

Exhibit "A" to Supplemental Affidavit of Joseph R. Walker

-----Original Message-----
From: Jeff Anderson [mailto:jeffreya_anderson@yahoo.com]
Sent: Wednesday, February 01, 2006 5:32 PM
To: Joe Walker; George Shea; bill.inman@focusenterprises.com
Subject: # of copies

About how many copies do we want printed up of the CIM?

From:       Joe Walker [j.walker@zassimedical.com]
Sent:       Wednesday, February 01, 2006 4:06 PM
To:         'Jeff Anderson'
Subject:    RE: 3rd email

Test

-----Original Message-----
From: Jeff Anderson [mailto:jeffreya_anderson@yahoo.com]
Sent: Wednesday, February 01, 2006 3:43 PM
To: Joe Walker
Subject: 3rd email

joe - try this one....i think my email server has a problem - jeff

From:       Joe Walker [j.walker@zassimedical.com]
Sent:       Wednesday, February 01, 2006 3:48 PM
To:         'Jeff Anderson'
Subject:    RE: 3rd email

Attachments:        EXECUTIVE Summary 2-1 JRW Draft.doc

Let me know if you get this one

-----Original Message-----
From: Jeff Anderson [mailto:jeffreya_anderson@yahoo.com]
Sent: Wednesday, February 01, 2006 3:43 PM
To: Joe Walker
Subject: 3rd email

joe - try this one....i think my email server has a problem - jeff

From:       Joe Walker [j.walker@zassimedical.com]
Sent:       Wednesday, February 01, 2006 3:35 PM
To:         'Jeff Anderson'
Subject:    RE: 2nd email

Attachments:        EXECUTIVE Summary 2-1 JRW Draft.doc


-----Original Message-----
From: Jeff Anderson [mailto:jeffrey.anderson@alleris.com]
Sent: Wednesday, February 01, 2006 3:34 PM
To: Joe Walker
Subject: 2nd email

this one works also

Jeff



Jeff Anderson
jeffrey.anderson@alleris.com

The Alleris Group
Box 1718
Vienna, VA 22183
703.938.7418 (w)
703.868.8705 (c)

From:       Joe Walker [j.walker@zassimedical.com]
Sent:       Wednesday, February 01, 2006 3:34 PM
To:         'Jeff Anderson'
Subject:    Test re-send

Attachments:        EXECUTIVE Summary 2-1 JRW Draft.doc