**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
Focus Enterprises, Inc., _____)
                               )
          Plaintiff,           )
                               )    Civil Action No. 06-2068 (GK)
     v.                        )
                               )
Zassi Medical Evolutions,      )
Inc.                           )
                               )
          Defendant.           )
                               )
```

**MEMORANDUM OPINION**

Plaintiff, Focus Enterprises, Inc. ("Focus") brings this claim against Zassi Medical Evolutions, Inc. ("Zassi") for breach of an alleged oral contract. This matter is before the Court on Defendants' Motion to Dismiss the Complaint and/or to Transfer the Action [Dkt. No. 3]. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons stated below, Defendant's Motion to Transfer is **granted** and its Motion to Dismiss is **denied without prejudice**.[1]

**I.    BACKGROUND**

Focus, a middle market investment banking firm, is a Virginia corporation with its principal place of business in the District of

---

[1] Because the Court concludes that this case should be transferred, it need not reach the question of personal jurisdiction raised in the Motion to Dismiss. See Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp., 127 S. Ct. 1184, 1192, 167 L. Ed. 2d 15 (2007)("[A] federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'")(internal quotation omitted).

Columbia.   It also has offices in San Francisco, Chicago, and Atlanta.   Part of Focus's business involves conducting research regarding potential investors in its client companies.   Zassi is a Florida corporation with its principal place of business in Fernandina Beach, Florida.   Zassi designs, develops, and manufactures gastrointestinal waste management systems and medical devices.   It has a longstanding relationship with two of Focus's Atlanta-based employees, William Inman ("Inman") and George Shea ("Shea").

On August 30, 2005, in Florida, Focus and Zassi entered into a written agreement ("August 30, 2005 Agreement") that provided for Focus to research potential investors for Zassi.   The August 30, 2005 Agreement provided that if Zassi entered into a transaction with an investor identified by Focus, Zassi would pay Focus a fee equal to five percent of the agreed transaction price.   The parties dispute whether the August 30, 2005 Agreement encompassed transactions involving the sale of Zassi's assets, but there is no dispute that it covered sales of debt and equity.   The August 30, 2005 Agreement provided that Zassi would pay Focus a monthly fee of five thousand dollars for six months.[2]   The Agreement also provided that it is governed by Florida law.   It was signed by Peter von Dyck, Zassi's President and Chief Executive Officer, and Inman.

_____

[2]  Zassi made seven such monthly payments to Focus's office in the District of Columbia.

After execution of the August 30, 2005 Agreement, Focus assigned Jeffrey A. Anderson ("Anderson") to the Zassi account. Anderson is employed at Focus's District of Columbia office. Focus claims that Anderson worked in that office to gather information and prepare a draft Confidential Information Memorandum ("CIM") detailing information about Zassi's

> business, its markets, its projected prospects for the future, and such further information as Focus, using its experience and expertise[,] deemed relevant and appropriate to allow prospective Financial Investors and prospective Strategic Buyers to quickly proceed with further investigation and negotiation of a transaction between such Financial Investor or Strategic Buyer and [Zassi].

Compl. ¶ 22; see Pl.'s Opp'n at 4.  Anderson also researched and prepared a list of potential financial investors for Zassi.  He traveled to Zassi's office in Florida at least once in connection with his preparation of the CIM and list of financial investors. See Def.'s Mot. at 33.  Some of his communications with Zassi employees indicated that his contact information was in Vienna, Virginia, and others indicated the District of Columbia.

Focus claims that Zassi found the list of financial investors inadequate.  Focus alleges that consequently, in early 2006, "it was suggested, and agreed, that Focus would prepare a list of potential strategic investors/buyers.  It was understood by all parties that if Focus identified a strategic investor/buyer, Focus would be paid its previously agreed fee."  Pl.'s Opp'n at 4.

On February 7, 2006, Zassi's shareholders met in Fernandina

-3-

Beach, Florida. Two of Focus's Atlanta-based partners, Inman and Shea, attended that meeting. Seven Zassi shareholders also attended, five of whom reside in Northeast Florida, one of whom works in Florida, and one of whom resides in Alabama. Focus alleges that the early-2006 oral agreement was disclosed at that meeting and no objection was raised. Anderson subsequently prepared a list of potential strategic buyers.

On April 13, 2006, Inman provided that list, which included Hollister International, Incorporated ("Hollister"), to Zassi. Focus alleges that Zassi, after receiving the list, contacted Hollister and provided it with the CIM that Focus had prepared regarding Zassi's business.

On July 14, 2006, Zassi and Hollister executed a letter of intent regarding Hollister's purchase of one of Zassi's product lines. On September 13, 2006, Zassi sold that product line to Hollister for a price not less than $85,000,000, $35,000,000 of which was paid at closing, with the balance to be paid in the future depending on certain conditions or events. Focus alleges that the fee payable in connection with the sale is five percent of the price, or $3,750,000, of which $1,750,000 should have been paid at the time the sale closed. On September 27, 2006, Zassi informed Focus that it would not pay the fee. Zassi claims that it had known and done business with Hollister for several years, and that Focus "played no role in locating Hollister or negotiating the

-4-

transaction." Def.'s Mot. at 5.

Focus sues for breach of contract, unjust enrichment, and quantum meruit. It seeks $1,750,000 and an order directing Zassi to provide Focus with five percent of all future payments by Hollister as a result of the sale. Zassi has filed a Motion to Dismiss or to Transfer, arguing that the Court has no personal jurisdiction over it, or in the alternative, that the case should be transferred to the Middle District of Florida.

## II. Analysis

The federal venue transfer statute provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) ("Section 1404(a)"). Our Court of Appeals has recognized that it may be "impossible to develop any fixed rules on when cases should be transferred." SEC v. Savoy Indus., 587 F.2d 1149, 1154 (D.C. Cir. 1978) (quoting Starnes v. McGuire, 512 F.2d 918, 929 (D.C. Cir. 1974). Accordingly, Section 1404(a) vests "discretion in the district court[] to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 27 (1988) (internal citation omitted). As the moving party, Defendants bear the burden of establishing that the transfer of these actions to another federal district is proper. See

-5-

<u>Onyeneho v. Allstate Ins. Co.</u>, 466 F. Supp. 2d 1, 3 (D.D.C. 2006).

There is no dispute that this action could have been brought in the District of Florida pursuant to 28 U.S.C. § 1391(a), since Defendant resides in Florida.  Accordingly, Zassi must demonstrate that considerations of convenience and the interest of justice weigh in favor of transfer to Florida.  <u>Trout v. Dep't of Agric.</u>, 944 F. Supp. 13, 16 (D.D.C. 1996).  The Court weighs a number of private and public factors in that determination.  <u>See</u> <u>id.</u> at 13.  The private interest considerations include

> (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.

<u>Berenson v. Nat'l Fin. Services, LLC</u>, 319 F. Supp. 2d 1, 2-3 (D.D.C 2004) (internal citations omitted).  The public interest considerations include "(1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferor and transferee courts; and (3) the local interest in deciding local controversies at home."  <u>Id.</u>

**A.    The Motion to Transfer Is Granted Because the Private and Public Factors Favor Litigation in Florida**

The convenience of the parties weighs heavily in favor of transfer in this case.  Zassi is a Florida corporation with its principal place of business in Fernandina Beach, Florida, in the

Middle District of Florida.  It has no offices in the District of Columbia, it does not transact business here, and it never traveled here in connection with its business with Focus.

Requiring Zassi to send numerous employees to the District of Columbia for this litigation could substantially interfere with its business.  See Thermal Technologies, Inc. v. Dade Service Corp., 282 F. Supp. 2d 1373, 1376-77 (S.D. Fla. 2003) (where the defendant's business was located in the transferee forum, all documents in the defendant's possession relating to the lawsuit were in the transferee forum, and the defendant's president, vice president, and office manager would be required to be absent from work to attend the trial, convenience of the parties weighed in favor of transfer).  Zassi would be manifestly inconvenienced by having to litigate in this forum.

Focus, in contrast, holds itself out as providing national and international services through its partners who handle clients in several regions, including the Southeast United States.  Even though it is headquartered in the District of Columbia, it chose to incorporate in the State of Virginia.  The two Focus partners directly responsible for handling the Zassi account, Inman and Shea, are listed on Focus's website as residing in the Jacksonville metropolitan area in Florida.  See Def.'s Mot. Ex. A ("Walker Aff."), at 6-7.  Moverover, Anderson traveled to Florida in connection with his work for Zassi.  Focus would suffer much less

inconvenience from litigation in the Middle District of Florida than Zassi would from litigation in the District of Columbia.

Focus's principal argument is that its choice of forum is entitled to deference. Although it is true that a plaintiff's choice of forum is entitled to some deference, that deference "is mitigated, however, where the plaintiff's choice of forum 'has no meaningful ties to the controversy and no particular interest in the parties or subject matter.'" Schmidt v. American Institute of Physics, 322 F. Supp. 2d 28, 33 (D.D.C. 2004) (internal quotations omitted) (granting the defendant's motion to transfer the action to the District of Maryland where most of the events occurred in Maryland and the District of Columbia had few ties to the case). "[T]he defendant's burden in a motion to transfer decreases when the plaintiff's choice of forum has no meaningful nexus to the controversy and the parties." Greater Yellowstone Coalition v. Bosworth, 180 F. Supp. 2d 124, 128 (D.D.C. 2001). "Cases decided under Section 1404(a) . . . 'have laid much less emphasis on this [residence] factor.'" Schmidt, 322 F. Supp. 2d at 34 (citing Kafack v. Primerica Life Ins. Co., 934 F. Supp. 3, 7 (D.D.C. 1996)).

The District of Columbia lacks meaningful ties to the controversy in this case. The material events constituting the factual predicate for this case occurred in Florida. See Schmidt, 322 F. Supp. 2d at 33-34 (citing Kafack, 934 F. Supp. at 6-7). The

-8-

August 30, 2005 Agreement was negotiated and executed in Florida, and the shareholder meeting at which the oral agreement allegedly was disclosed occurred in Fernandina Beach, Florida.[3]  Zassi's only contacts with the District of Columbia in this case were (1) its emails with Anderson while he allegedly was working out of Focus's District of Columbia office; (2) the monthly fees it mailed to Focus's District of Columbia office; and (3) its September 27, 2006 telephone call to Focus's District of Columbia office, in response to a telephone call from a Focus executive, to state that Zassi would not pay Focus a five percent fee for the Hollister transaction.  For these reasons, the locus of the action also weighs in favor of transfer.

The convenience of witnesses and ease of access to proof do not weigh in favor of either forum.  The majority of non-party witnesses are residents of Florida.  However, this factor is relevant "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." Berenson, 319 F. Supp. 2d at 3; see also Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Resources, Inc., 196 F. Supp. 2d 21, 33 (D.D.C. 2002) (party seeking transfer must show that "witnesses will refuse to appear if the trial is held in the District of Columbia").  Zassi does not suggest that any of its witnesses will refuse to appear at a trial

---

[3] Focus has not clearly alleged where the oral agreement was entered into.

in this forum. Moreover, technological advances have significantly reduced the weight of the ease-of-access-to-proof factor. Although Zassi argues that most of the documents relevant to the dispute are located in Florida, the small amount of documents that will probably be in issue in this case may be easily transmitted electronically.

The public factors also favor the transfer of this case to Florida. The interests of justice "are best served by having a case decided by the federal court in the state whose laws govern the interests at stake." Trout Unlimited v. United States Dep't of Agriculture, 944 F. Supp. 13, 19 (D.D.C. 1996)(internal citations omitted). Focus's common law claims of breach of contract, unjust enrichment, and quantum meruit are more likely to be governed by Florida law than any other state's law given the August 30, 2005 Agreement's provision for application of Florida law, and Florida's more substantial interest in this dispute. See Hitchcock v. United States, 665 F.2d 354, 360 (D.C. Cir. 1981) (noting that a state "would have some interest in having its law applied to decide the liability of a business headquartered there at least where, as here, the [state] has other substantial contacts with the litigation"); Restatement (Second) of Conflict of Laws § 188 (1971) (in contract case, courts apply the laws of the jurisdiction with the more substantial interest in the controversy).

Because Florida law is more likely to apply than the law of the District of Columbia, the interests of justice are best served by transfer. For the same reasons, the local interest in deciding local controversies at home also weighs in favor of transfer.

Zassi cites to statistics from the Administrative Office of the United States Courts to show that the Middle District of Florida has a lower per-judge civil case load and that civil cases there proceed to trial in approximately one-half the amount of time that they do in this District Court. Def.'s Mot. at 36. Focus does not address this argument. "Although congestion alone is not sufficient reason for transfer, relative docket congestion and potential speed of resolution is an appropriate factor to be considered." Starnes v. McGuire, 512 F.2d 918, 932 (D.C. Cir. 1974). Accordingly, this factor weighs in favor of transfer to the Middle District of Florida.

The significant inconvenience to Zassi that would be caused by litigation in this forum, the relative accessibility of the Middle District of Florida for Focus, and Florida's more substantial interest in the controversy tip the balance heavily in favor of transfer.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Transfer is **granted**, and the Motion to Dismiss is **denied without prejudice**.

Defendant may refile the Motion to Dismiss, if appropriate, upon transfer to the District of Florida.

An Order will issue with this Memorandum Opinion.


May 31, 2007
                                    /s/
                                    _____
                                    Gladys Kessler
                                    United States District Judge